IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lizette Valenzuela, ) | No. CV 04-395-TUC-CKJ |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Pima County, et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court are Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. For the reasons stated below, both motions are denied.

**I. Standard of Review**

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* Thus, the "mere scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252. However, in evaluating a motion for

1  summary judgment, "the evidence of the nonmoving party is to be believed, and all
2  justifiable inferences are to be drawn in his favor." *Id.* at 255.

3  **II. Background**

4  On July 7, 2003, a Tucson Police Department ("TPD") officer initiated a traffic stop;
5  Plaintiff, Lizette Valenzuela, was a passenger in the car and she initially said her name was
6  Lizette Majalca. Thereafter, Plaintiff was taken to the Pima County Jail (the "Jail") on
7  charges of possession of marijuana and false reporting.

8  According to Defendants, upon arriving at the Jail, Plaintiff fell out of the car. Plaintiff
9  was then taken into the Jail to speak with a nurse; while being escorted in, Defendants allege
10 that Plaintiff stated: "I'm going to throw up on you fucking cops." Thereafter, Defendants
11 allege that Plaintiff refused to answer the nurse's questions, that Correctional Officers ("CO")
12 had to hold her up to prevent her from falling over, and Plaintiff's uncooperative and
13 unpredictable behavior caused them to remove her from the pre-booking area. While
14 escorting her to the ID area, Defendants allege that Plaintiff tried to turn her head and body
15 towards CO Keebler. In light of the alleged previous threat to vomit on the officers, CO
16 Keebler grabbed the back of Plaintiff's head and hair to prevent her from turning towards her.
17 Thereafter, CO Keebler placed Plaintiff in "hard" metal four-point restraints at approximately
18 2:50 a.m. and she was allegedly examined by a nurse immediately thereafter. At
19 approximately 5:10 a.m., CO Keebler entered Plaintiff's cell to remove the four-point
20 restraints; however, Defendants allege that Plaintiff was still uncooperative and intentionally
21 coughed in CO Keebler's face. As such, Plaintiff's hard metal four-point restraints were
22 removed, but she was then immediately placed in "soft" four-point restraints which are made
23 out of leather and have padding on the portions of the restraints that touch the detainee's skin.
24 Immediately after Plaintiff was placed in the soft restraints, Defendants allege that she was
25 again checked by a nurse. At 6:42 a.m., Defendants allege that Plaintiff was checked by
26 medical and Jail staff, and she was released from her four-point restraints at 7:00 a.m. CO
27 Keebler's immediate supervisor, Sergeant Suddath, approved the use and duration of the four-
28 point restraints as carried out by CO Keebler. Due to Plaintiff's alleged conduct, Defendants

1  stress that Plaintiff could not complete the dress out process (i.e., undressed, placed in Jail
2  clothes, and searched for drugs, weapons, etc.) which meant that she could not be safely
3  placed in the general population. Defendants allege that their actions were justified as her
4  conduct and non-compliance presented a risk to the Jail and staff.

5      In contrast to the evidence introduced by Defendants to support the above facts, Plaintiff
6  has also introduced admissible evidence painting a different picture of the circumstances in
7  question. Plaintiff alleges that upon arrest for the misdemeanor charges which were later
8  dismissed, she was placed in the back of a patrol car that lacked any air conditioning for an
9  extended period of time. As such, she alleges that as a result of these warm conditions, she
10 felt overheated and sick by the time she arrived at the Jail. Thus, due to her feelings of
11 sickness, when she was allegedly pulled out of the vehicle by the TPD officer, she fell out
12 of the backseat onto the ground. As CO Keebler began escorting her towards the Jail,
13 Plaintiff allegedly told CO Keebler that she felt sick from the heat, dizzy, needed air, and that
14 she felt like she might have to vomit. However, Plaintiff denies saying: "I'm going to throw
15 up on you fucking cops." Plaintiff alleges that she was taken to the nurse, but due to her
16 feeling ill, she could not stand on her own; as such, she alleges that officers quickly took her
17 away from the nurse in less than a minute thereby denying her the opportunity to speak with
18 the nurse. Further, Plaintiff alleges that she never refused to answer the nurse's questions.
19 As she was being escorted away from the nurse, Plaintiff alleges that CO Keebler stated that
20 she did not like Plaintiff's attitude, was giving her a hard time, and that CO Keebler painfully
21 grabbed the back of her hair as she was being pushed towards a cell. Plaintiff alleges that
22 she was handcuffed behind her back at this time, and that she was not threatening, physically
23 resisting, or otherwise not cooperating with officers at the time. Thereafter, Plaintiff was
24 placed in hard four-point restraints in her cell, and she alleges that she remained in restraints
25 for three hours. After three hours, Plaintiff alleges that CO Keebler checked on her and then
26 placed her in the soft restraints. Plaintiff alleges that she cooperated with CO Keebler while
27 she was checking on her, and that she did not cough in CO Keebler's face. After Plaintiff
28 was released from her restraints at 7:00 a.m., she alleges that she felt severe pain in her wrists

1 and shoulders. When she was released on July 8, 2003, Plaintiff alleges that she went to the
2 emergency room at St. Mary's hospital, and hospital staff determined that she had a fractured
3 wrist, rib contusions, right shoulder contusions, and numerous bruises on her body; Plaintiff
4 alleges that these injuries occurred while in the custody of the Pima County Jail. Arising
5 from these allegations, Plaintiff asserts federal civil rights violations and state law claims
6 against Defendants.[1]

## III. Discussion

### A. Federal Civil Rights Violations

#### 1. Legal Standards Regarding Excessive Force and Punishment

Plaintiff claims that Defendants used excessive force and otherwise punished her without justification while a pretrial detainee. As a threshold matter, the Court notes that because Plaintiff was a pretrial detainee and obviously had not been convicted of a crime during the time in question, the Eighth Amendment's prohibition against cruel and unusual punishment does not apply. *See Pierce v. Multonomah County, Or.*, 76 F.3d 1032, 1042 (9th Cir. 1996). Rather, the Eighth Amendment's prohibition against cruel and unusual punishment applies only after one has been convicted and sentenced. *Id.* Under the alleged facts of this case, the Fourth Amendment is the applicable constitutional standard regarding the treatment of Plaintiff who was a pretrial detainee at the time in question. *Id.* at 1043. Thus, the Fourth Amendment's objective reasonableness standard regarding the use of force applies in this case. *Id.* As a pretrial detainee, Plaintiff could not be constitutionally punished[2] and

---

[1] Defendants argue that Plaintiff misconstrues certain facts and submits inconsistent or incorrect evidence. *See* Reply at 2-6. The Court disagrees. For the most part, a review of the relevant evidence submitted by the parties simply shows valid disputes of fact, differing views of the relevant facts, or Plaintiff's permissible elaboration or clarification of the facts. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1157-1158 (1999)(noting the difference between a "sham" affidavit, and a affidavit further elaborating, explaining or clarifying facts which is permissible); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991)(same).

[2] A sentenced inmate may be punished, but it can not be cruel and unusual punishment. *See Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979)

excessive force could not be used against her while in the custody of Defendants. *Id.* at 1042-43; *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).

An alleged constitutional violation based on excessive force is subject to the constraints of the Fourth Amendment. *See Monroe v. City of Phoenix, Arizona*, 248 F.3d 851, 861 (9th Cir. 2001). "Under the Fourth Amendment, police may only use such force that is objectively reasonable under the circumstances." *Id.* (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000). A police officer's use of force is excessive and, thus, violates the Fourth Amendment when balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests" with "the countervailing governmental interests at stake," the finder of fact determines the force used was unreasonable. *Graham v. Connor,* 490 U.S. 386, 396 (1989). Because of the necessary balancing of interests, "summary judgment . . . in excessive force cases should be granted sparingly." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002). In relation to these issues, the Ninth Circuit has held that overly tight handcuffing of an individual and continued detention in tight handcuffs can constitute excessive force. *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir.2004); *LaLonde v. County of* Riverside, 204 F.3d 947, 960 (9th Cir. 2000); Alexander *v. County of Los Angeles,* 64 F.3d 1315, 1322-23 (9th Cir. 1995); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (1993); *Hansen v. Black,* 885 F.2d 642, 645 (9th Cir. 1989). The Ninth Circuit has also stated that "the force that was applied must be balanced against the *need* for that force: it is the need for force which is at the heart of the [excessive force determination]." *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994). Further, the Ninth Circuit has found that where is no need for force, any force used is objectively unreasonable for constitutional purposes. *P.B. v. Koch*, 96 F.3d 1298, 1303-04 & n.4 (9th Cir. 1996); *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000), vacated by 534 U.S. 801, and aff'd on remand, 276 F.3d 1125 (9th Cir. 2002).

As to Plaintiff's claim of punishment, although due process dictates that a pretrial detainee may not be punished, not "every disability imposed during pretrial detention amounts" to punishment for constitutional purposes. *Bell*, 441 U.S. at 537-41. Where a condition or

restriction imposed on a pretrial detainee is reasonably related to a legitimate governmental objective, it does not amount to punishment. *Id.* at 539. "The Government . . . has legitimate interests that stem from its need to manage the facility in which the individual is detained . . . the Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees. Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial . . . the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.* at 540. However, "if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees . . ." *Id.* 539.

### 2. Individual Liability CO Keebler and Sergeant Suddath

To establish individual liability in a §1983 case, a plaintiff must show that the individual officers personally participated in the alleged deprivation of constitutional rights. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monnell V. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). As to the individual liability of those in supervisory positions, they can be held liable only if they were either personally involved in the alleged constitutional deprivation or there was a sufficient causal connection between the supervisors conduct and the alleged violation. *See id.*

In light of the material disputed facts in this case, neither side is entitled to summary judgment pertaining to whether there was a violation of Plaintiff's civil rights. According to Defendants, Plaintiff was immediately hostile, uncooperative, and otherwise disruptive as soon as she came into contact with CO Keebler and other officers. They allege that she appeared to be under the influence of drugs or alcohol, was stumbling, threatened to vomit on officers, refused to answer questions, engaged in actions that prevented officers from

- 6 -

1  searching her, and otherwise exhibited behavior that presented safety concerns for officers
2  and the Jail in general.  As such, Defendants argue that they used reasonable force and did
3  not punish Plaintiff as their actions in restraining her were necessary to the legitimate
4  government objective of ensuring safety and order in the Jail.  In contrast, Plaintiff alleges
5  that she was sick upon arrival at the Jail due to her detention in a hot patrol car, that she
6  never made any threats to officers, she never refused to answer questions, and that she
7  cooperated with officers the entire time at the Jail; thus, under Plaintiff's version of the facts,
8  she was entirely cooperative and never presented any danger to the safety or order of the Jail
9  such that the four-point restraints and accompanying injuries were totally unjustified.  In light
10 of these differing facts, summary judgment is inappropriate as to the individual liability of
11 CO Keebler and Sergeant Suddath who were both personally involved in the alleged
12 constitutional deprivations.  Furthermore, as the law was clearly established pertaining to the
13 alleged civil rights violations in question, and a reasonable officer clearly would be aware
14 of the constitutional violations, the individual officers in this case are not entitled to qualified
15 immunity under the facts alleged.  *See Saucier v. Katz*, 533 U.S. 194, 202 (2001)(officers are
16 entitled to qualified immunity where "it would [not] be clear to a reasonable officer that his
17 conduct was unlawful in the situation he confronted . . ."); *Drummond v. City of Anaheim,*
18 343 F.3d 1052, 1056 (9th Cir. 2003) (holding that the law excessive force was clearly
19 established by 1999); *LaLonde,* 204 F.3d at 960; *Alexander,* 64 F.3d 1315, 1322-23 (9th Cir.
20 1995); *Palmer*, 9 F.3d at 1436;  *Hansen,* 885 F.2d at 645; *P.B. v. Koch*, 96 F.3d at 1303-04
21 & n.4; *Headwaters Forest Defense*, 240 F.3d 1185, 1199 (9th Cir. 2000), vacated by 534 U.S.
22 801, and aff'd on remand, 276 F.3d 1125 (9th Cir. 2002).

23 **3.  Liability of Pima County and Sheriff Dupnik in His Official Capacity**

24    To establish liability against Pima County and Sheriff Dupnik in his official capacity, a
25 plaintiff must show that the alleged constitutional violation was attributable to some official
26 policy or custom of the government entity.  *See Larez v. City of Los Angeles*, 946 F.2d 630,
27 645 (9th Cir. 1991).   In *Monnell v. New York City Dept. of Social Services*, 436 U.S. 658
28 (1978), the Court held that local governmental entities could be held liable under §1983 for

- 7 -

1 deprivations of federal rights. However, municipalities can not be held liable pursuant to the
2 doctrine of respondeat superior. *See id.* at 691. Municipal liability therefore can not be
3 imposed "vicariously on government bodies solely on the basis of an employer-employee
4 relationship with a tortfeasor." *Id.* at 692. A municipality may be held liable only if the
5 constitutional violation was caused pursuant to an "official policy" of the municipality. This
6 requirement is "intended to distinguish acts of the municipality from acts of employees of the
7 municipality, and thereby make clear that municipal liability is limited to action for which
8 the municipality is actually responsible." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 480
9 (1986)(emphasis in the original). Generally:

> A Plaintiff suing under §1983 may establish municipal liability in the following ways: First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity . . . Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy . . . Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

15 *See Gillette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992)(citations and internal
16 quotes omitted); *see also Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996); *Christie v. Iopa*, 176
17 F.3d 1231 (9th Cir. 1999). Further, a municipality can be held liable based on inadequate
18 training of its officers reflecting deliberate indifference to constitutional violations. *See City*
19 *of Canton v. Harris*, 489 U.S. 378, 387 (1989).

20 Plaintiff has failed to introduce any admissible evidence creating an issue of fact as to the
21 liability of Pima County or Sheriff Dupnik. In her Complaint, Plaintiff claims that Pima
22 County and Sheriff Dupnik are liable for the civil rights violations in question due to their
23 role in "developing, implementing, and maintaining policies or customs which exhibit
24 deliberate indifference to the constitutional rights of persons . . . incarcerated in the Pima
25 County Jail . . ." *See* Complaint at ¶48. However, a review of Plaintiff's Response/Cross-
26 Motion for Summary Judgment shows that Plaintiff has no actual evidence of policies
27 exhibiting deliberate indifference to the constitutional rights at issue. *See* Responsive Brief
28 at 10-11. Rather, Plaintiff simply argues that the Jail has applied restraints (beyond routine

handcuffing) on a daily basis for many years, restraining of inmates is reported "up the chain of command,"[3] that it is "inconceivable" that Sheriff Dupnik is unaware of relevant use of restraints at the Jail, and that the non-routine use of restraints such as four-point restraints is a standard practice at the Jail. *See id.* There is no evidence that the daily practice of non-routine restraining of inmates that has occurred over many years is objectively unreasonable or is not done for a legitimate government purpose such as maintaining safety and order at the Jail. Further, there is no evidence that any of the actual policies at the Jail, or any action or inaction of Sheriff Dupnik or Pima County contributed to the alleged constitutional violations at issue. Rather, the admissible evidence only reflects isolated, alleged unconstitutional acts of non-policy making employees (CO Keebler and Sergeant Suddath); this is insufficient to create an issue of fact as to the liability of Pima County or Sheriff Dupnik. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)(plurality opinion). Thus, summary judgment is granted as to the liability of Sheriff Dupnik and Pima County.

### B. State Law Claims

Lastly, Plaintiff asserts various state law claims for assault and battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and false imprisonment. Defendants argue that A.R.S. §12-821 bars these claims; this statute states: "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." Plaintiff experienced and was aware of the alleged violations at issue in this case on July 7, 2003; however, Plaintiff did not file this suit until August 6, 2004. As such, Defendants argue that these claims are barred by the statute of

---

[3] This "up the chain of command" assertion is based on comments made by Sergeant Suddath in his deposition. Sergeant Suddath made clear that he reported these incidents to only his immediate supervisor, but he had no personal knowledge as to how far these daily reports actually go up the chain of command.

- 9 -

limitations. However, Plaintiff submitted evidence[4] indicating that equitable estoppel applies in this case. *See Pritchard v. State*, 163 Ariz. 427, 432, 788 P.2d 1178, 1183 (1990)(statute of limitations period as applicable to claims against public entities is subject to waiver, estoppel, and equitable tolling).; *Madden-Tyler v. Maricopa County*, 189 Ariz. 462, 469-70, 943 P.2d 822, 829-30 (Ct. App. 1997)(same); *Pike v. Arizona Dept. of Transp.*, 1998 WL 30531, *7 (Ct. App. 1998)(same).

Plaintiff attached a letter, dated July 7, 2004, from a Casualty Claims Officer from Pima County Risk Management. The Claims Officer sent the letter to Plaintiff's previous attorney, and it stated in relevant part: "As we discussed, I will agree to extend the statute of limitations by 30 days to August 7, 2004 so that you can review this case." Obviously relying on this letter, Plaintiff filed her suit on August 6, 2004. Nevertheless, Defendants now assert the statute of limitations. As Plaintiff reasonably relied on Defendants assurances to her detriment, Defendants are estopped from asserting the statute of limitations as a defense; further, the Court notes that is clear that allowing Defendants to assert the statute of limitations under these circumstances would work an injustice and the government's interests are not unduly damaged by applying estoppel in this case. *See*, *e.g.*, *Roer v. Buckeye Irr. Co.*, 167 Ariz. 545, 547, 809 P.2d 970, 972 (Ct. App. 1990)("A defendant will be estopped from asserting the defense of the statute of limitations if by its conduct the defendant induces the plaintiff to forego litigation . . . "); *Cheatham v. Sahuaro Collection Service, Inc.*, 118 Ariz. 452, 455, 577 P.2d 738, 741 (Ct. App. 1978)("Where the facts warrant, an Arizona court may apply . . . equitable estoppel to avoid the bar of the statute of limitations."); *Carlson v. Arizona Dept. of Economic Sec.*, 184 Ariz. 4, 6, 906 P.2d 61, 63 (Ct. App. 1995)("Equitable estoppel is [applicable where there is]. . .(1) conduct by which

---

[4]The Court notes that Plaintiff submitted this evidence in an untimely manner. Instead of addressing this issue in her response, Plaintiff waited to submit this evidence <u>after</u> Defendants filed their Reply brief. Nonetheless, the Court will consider this evidence for purposes of the pending summary judgment motions; Defendants' Motion to Strike this untimely filing is denied.

one induces another to believe in certain material facts; and (2) the inducement results in acts in justifiable reliance thereon; and (3) the resulting acts cause injury . . . The doctrine will apply to the state if the government's wrongful conduct threatens to work a serious injustice and if the public interest would not be unduly damaged by the imposition of estoppel . . . the imposition of estoppel must not unduly affect the state's exercise of its governmental powers and sovereignty."). Accordingly, summary judgment as to the state law claims based on the statute of limitations defense is denied.

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Defendants' Motion for Summary Judgment is **denied in part and granted in part**;

(2) Plaintiff's Cross-Motion for Summary Judgment is **denied**;

(3) The parties shall submit their joint proposed Pretrial Order and any motions in limine (if any) within 30 days of the filing date of this Order.

DATED this 15th day of November, 2005.

_Cindy K. Jorgenson_
Cindy K. Jorgenson
United States District Judge